## SOMMERSETH v. UNITED STATES.
### No. 139 of 1949, Admiralty.

United States District Court
E. D. Pennsylvania.

July 21, 1950.

Freedman, Landy and Lorry, Philadelphia, Pa., for libellant.

Gerald A. Gleeson, U. S. Atty., and Krusen, Evans and Shaw, Philadelphia, Pa., for respondent.

CLARY, District Judge.

This is a suit in admiralty in which the libellant, Erling Sommerseth, seeks damages against the United States for injuries resulting from an accident which occurred on August 18, 1948, at or about 3:00 p. m., aboard the S. S. South Bend Victory; at that time lying in navigable waters in the Delaware River, moored to Pier 3 North Wharves in the Port of Philadelphia. The vessel was owned and operated by the United States through its general agent, Boland and Cornelius.

#### Findings of Fact.

The libellant was an employee of the Century Engineering and Welding Company, which had contracted with the re-

spondent to perform certain stripping and rigging operations aboard the S. S. South Bend Victory to prepare the vessel for the "moth ball" fleet. Libellant's duties began at 8 o'clock in the morning of August 18, 1948, his first day of work aboard the vessel.

While libellant was engaged in operating the starboard winch located aft of the No. 3 main deck cargo hatch lowering a lifeboat into the No. 3 hold, he was struck on the left knee by a piece of 2 x 4 lumber, approximately 8 to 10 feet long, which had slipped from the top of a wooden framework for a roof approximately 10 feet above the deck. The framework was composed of pieces of lumber erected as uprights on the inside and outside of the port and starboard winches, with pieces of dunnage running fore and aft back to the midship house and pieces of dunnage crossing them athwartships. This framework which was in place when libellant boarded said vessel appeared to be in good condition and was a type commonly used by stevedores for protection against the sun or inclement weather. Personnel aboard the vessel had made frequent routine inspections for a number of days prior to the date of the accident and shore workers engaged to clean the holds and stack and remove dunnage had been aboard the vessel since August 13, 1948, 5 days prior to the accident. Following the accident, libellant and Pedersen, operator of the port winch, dismantled the framework to prevent the possibility of other pieces falling upon them. This was done by cutting the lashings which secured the boards to the top of the framework. In the course of the dismantling it was found that some of the lumber forming the top of the framework was not properly lashed or secured. The record discloses that nothing that libellant or his co-employee did in the operation of the winches resulted in any contact with the framework. There is nothing in the record to indicate that it was within the scope of the duties of the libellant or his employers to remove such a structure. The board slipped and fell as a result of the vibration set up by the operation of the winches and the testimony discloses that the vibration set up by that operation was not of an extraordinary nature. Libellant had been given no warning of the defective condition of the framework and I find that the respondent was negligent in failing to give libellant warning of the defect and in failing to correct the defective condition which a reasonable inspection should have disclosed.

Immediately following the injury, libellant experienced pain on top of the left knee similar to that of a bruise. When he awakened the following morning, the knee joint had become tender and swollen and he limped to work, and then, for the first time, reported the accident to his foreman. He worked the forenoon and was then sent by his employer to the clinic of his employer's compensation insurance carrier, where X-ray examination showed no fracture or bone pathology of the left knee joint, and he was given physiotherapy treatment and ointment dressing. The knee did not respond to treatment and the libellant was furnished a pair of crutches at the clinic on August 23, 1948. On that day, while returning to his home from the clinic, the libellant slipped and fell due to his unfamiliarity with the crutches and he injured his right knee. The following day the right knee joint was also tender and swollen. X-ray plates taken at the clinic were negative for fracture in the right knee also. Both knee joints continued to pain the libellant and on August 28, 1948, the libellant called in his family physician, who tentatively diagnosed the condition as a fulminating osteomyelitis and recommended hospitalization. By August 30, 1948, libellant was suffering from inflammation of the ankle joints, feet, shoulders and hip, in addition to the knees. He also had a temperature in excess of 102 degrees and was removed to the Pennsylvania Hospital where he remained until September 23, 1948. The final diagnosis was rheumatic fever without carditis. Following his release from the hospital, libellant was instructed to remain in bed for several weeks and received intermittent treatment from his family physician, who followed the recommendations of the hospital in respect of such treatment. He returned to work on February 22, 1949, but he suffered pain in his legs thereafter and had some difficulty in working. On April

30, 1949, he was treated by his family physician for varicose veins of the leg which apparently had no connection with the rheumatic fever. He was gainfully employed almost continuously from February 22 and disability resulting from the accident ended by February 22, 1949, although there was some residual pain and discomfort. I find that the injury sustained by the libellant from the fall of the timber on August 18, 1948 and from the subsequent fall on crutches were the precipitating factors and the exciting causes of the disability resulting from rheumatic fever.

■ The libellant, for a period of weeks, suffered rather intense pain. The record is not wholly clear as to the extent of his suffering thereafter, although it appears he did suffer some pain and discomfort. He lost in excess of six months from work and the testimony discloses that his earnings were approximately $70 per week. In addition, there were medical bill of $53 to his family physician, and his employer expended in his behalf for medical and hospital attention the sum of $247.75. I find, therefore, that the libellant has sustained damages and is entitled to recover the sum of $3,300.

## Discussion.

■ In this case the libellant had the burden of establishing (1) that the accident was caused by the negligence of the respondent, and (2) that there was a direct causal connection between the trauma and the disability from rheumatic fever. The libellant has sustained the burden of proving both elements and he is therefore entitled to recover damages.

■ The shipowner had the duty to provide the libellant with a reasonably safe place to work and it could not delegate that duty. There was evidence to show that there had been routine inspections by ship's personnel. There was also evidence to show that neither the libellant nor his co-employee Pedersen caused anything to come in contact with the structure and that the cause of the fall of the timber was normal vibration from the operation of the winches acting upon the improperly secured timber. While the structure was being dismantled it was discovered that other pieces of lumber were improperly secured and that condition constituted a menace to those working under or near the structure.

■ The libellant had the right to rely on respondent's observance of its duty to provide him with a reasonably safe place in which to work. Of course, he would be chargeable with notice of any defects which were apparent or which would have been disclosed by a casual inspection, but the evidence here is that the structure appeared to be in good condition and was a type commonly used on ships for the protection of stevedores against the sun and weather. The defect, the improperly secured boards and timber, was of the type which a reasonable inspection should have disclosed and the respondent was negligent in failing to discover and repair the condition, or in failing to disclose to the libellant the existence of the defective condition.

As to the causal connection between the trauma and the rheumatic fever, the problem is more difficult. The expert medical testimony was conflicting on the question of causal connection between the bumps which the libellant received on August 18 and August 23 and the subsequent disability from rheumatic fever. The libellant's medical expert testified positively that the blow to the left knee and the later fall on the right knee could be and were the precipitating factors and exciting causes of the rheumatic fever which libellant suffered thereafter. The respondent's medical experts testified that there was no connection and that the trauma here involved could not light up the condition of rheumatic fever. Respondent's medical testimony was that the chain of events was purely co-incidental.

After carefully considering both contentions, I am of the opinion that the weight of the evidence is clearly in favor of libellant's position. I am convinced by the testimony of libellant's medical expert that the bumps to the knees created a point of lowered resistance which subjected the joints to the infection of rheumatic fever which was characterized by both sides as a secondary infection.

460

Conclusions of Law.

1. The parties and the subject matter are within the jurisdiction of this Court.

2. Respondent as owner of a vessel in navigable waters was under a legal obligation to provide the libellant with a safe place to work, pursuant to the work order issued to his employer, or to warn him of the dangerous condition of the framework. Failure to do so constituted negligence and was the proximate cause of libellant's disability.

3. Judgment may be entered in favor of the libellant and against the respondent in the sum of $3,300.